IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**AMY DIVINE, individually and**                                                               **PLAINTIFF**
**on behalf of all others similarly situated**

**v.**                                                            **CIVIL ACTION NO.** 3:22-cv-510-HTW-LGI

**AMERICAN DIGITAL SECURITY, LLC;**
**SECURIX LLP; and SECURIX, LLC**                                        **DEFENDANTS**

**CLASS ACTION COMPLAINT**
**Jury Trial Demanded**

COMES NOW Plaintiff Amy Divine, individually and on behalf of all others similarly situated, and files this Class Action Complaint against Defendants and states as follows:

**NATURE OF THE CASE**

1. Pretending to be law enforcement, Defendant has made millions of dollars collecting fees from individuals who allegedly violated state uninsured motorist laws.[1]

2. Specifically, Defendant contracts with government entities ("City" or "Cities") to implement Defendant's system ("Diversion Program") for detecting, ticketing, and collecting fees from vehicle owners that Defendant believes are uninsured. Defendant tickets the registered owner of the vehicle without regard to who was driving and with no analysis on wheth3r the driver was lawfully insured.

3. Defendant goes to great lengths to make it appear that the City operates the Diversion Program. Defendant's form ticket or citation bears the name of the City and does not

---

[1] In 2021, Defendant American Digital Security purchased the Securix companies, but the companies continue to operate as Securix. https://americandigitalsecurity.com/american-digital-security-acquires-securix/ (last visited on September 1, 2022). Thus, Plaintiffs refer to Defendants collectively as "Defendant" or "Securix."

mention Defendant's name. The ticket contains what appears to be a police officer's sworn affidavit and states that a court date has been set (though no case has actually been docketed).

4. The ticket provides a telephone number and website that a vehicle owner can use to pay the fee. But, Defendant, not the City, creates and maintains the number and the website.

5. Acting under color of law, Defendant handles everything from detection of the alleged violation to payment of the fee. Put simply, for alleged uninsured motorist infractions, Defendant becomes the police department.

6. Defendant's Diversion Program violates the rights afforded Plaintiff and the Class by the Constitution, statutes, and common law. Plaintiff and the Class assert claims for violations of 42 U.S.C. § 1983 and 1985 as well as for unjust enrichment.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), because this case is a class action, the class has more than 100 members, the amount in controversy exceeds $5,000,000, and Plaintiff is a citizen of a different state than Defendants.

8. Each Defendant is a limited liability company or limited liability partnership. As such, for the purpose of determining CAFA jurisdiction, Defendants are treated as unincorporated associations. 28 U.S.C § 1332(d)(10). Therefore, the Court's jurisdiction is not determined by the citizenship of Defendants' members.

9. This Court has supplemental jurisdiction to determine state law claims per 28 U.S.C. § 1367.

10. Venue is proper in this District per 28 U.S.C. § 1391 because Defendants have a (non-principal) place of business in this District and conduct business in this District.

## PARTIES

11. Plaintiff Amy Divine is an adult resident citizen of the state of Mississippi residing in Madison County, Mississippi.

12. American Digital Security, LLC is a Missouri limited liability company. It may be served with process by service upon its registered agent, CSC-Lawyers Incorporating Service Company, at 221 Bolivar St, Jefferson City, Missouri 65101.

13. Defendant SECURIX, LLC is a Missouri limited liability company. It may be served with process by service upon its registered agent, CSC-Lawyers Incorporating Service Company, at 221 Bolivar St, Jefferson City, Missouri 65101.

14. Defendant Securix LLP is a limited liability partnership incorporated in the state of Delaware with its principal place of business in the state of Georgia. It may be served with process by service upon its registered agent, Stuart Tirey, at 211 Chippewa Circle, Jackson, Mississippi 39211.

## FACTS

### A. Defendant's Unlawful Conduct

15. Uninsured motorist statutes make it unlawful to operate a vehicle on a public roadway without liability insurance. The statutes require an uninsured motorist to pay a fine to avoid harsher penalties such as suspension of their driver's license. The statutes also provide protections and defenses to an uninsured motorist, *e.g.*, appearing in court to challenge probable cause or to provide proof that the vehicle was insured at the time of the alleged violation.

16. There is no statute that allows a person to be cited for merely owning a vehicle that does not have liability insurance registered to that specific vehicle. The statutes only require that a properly stopped vehicle operator (as opposed to the owner) provide proof of liability insurance coverage for the person operating the vehicle. Defendant takes zero effort to determine who was operating the vehicle for purposes of issuing its Tickets.

17. The statutes impose requirements on law enforcement regarding the detection and ticketing of uninsured motorists. In short, from the initial identification of an alleged violation to adjudication of the ticket, the statutes articulate a process for dealing with violations.

18. Enforcing an uninsured motorist statute costs a City money and resources. Detection, enforcement, and prosecution present budget and staffing difficulties. And the time police officers spend on such infractions detracts from the time they could have spent on more serious crimes.

19. In comes Defendant. Defendant represents to Cities that its Diversion Program will not only ease these burdens, but actually increase revenues. Defendant will even pay the Cities' police officers for "confirming" the alleged violations.

20. The pitch has been successful, and Defendant has contracted with Cities in several states to implement the Diversion Program. On one of its websites, Defendant states, "SECURIX has established and operates Public Safety Companies in most states around the nation, (see newyorkpublicsafety.com, missouripublicsafety.com, etc.)."[2]

21. But the Diversion Program is unlawful.

22. To identify alleged uninsured motorists, the Diversion Program relies on automated license plate readers ("ALPRs"), which can be mounted on police cars, road signs, or traffic lights. ALPRs capture computer-readable images of license plates that allow Defendant to compare the plate numbers against various databases to determine whether a particular vehicle is insured or not. If Defendant believes a vehicle is uninsured, Defendant mails a document to the vehicle owner that purports to be a legitimate traffic ticket.[3]

---

[2] https://www.securixsystems.com/ (last visited on September 1, 2022).

[3] Solely for brevity's sake, Plaintiff refers to the document as "Ticket." Plaintiff disputes that the

23. While some states allow law enforcement to employ ALPRs for investigating certain crimes, the states at issue prohibit the use of ALPRs to enforce uninsured motorist statutes. Further, ALPRs only identify the registered owner of the vehicle and not the actual driver. Despite lack of probable cause as to whether the actual driver of the vehicle was uninsured, Defendant proceeds based only on the information it gathers from vehicle owner records, and not the driver.

24. But wait, there's more. The Diversion Program is egregiously misleading and deceptive.

25. The Ticket Defendant mails to the vehicle owner has all the trappings of a legitimate ticket. It represents that it is issued by the City's police department, and it does not mention Defendant's name. The Ticket contains what appears to be a sworn affidavit from a police officer stating that the owner has violated the state's uninsured motorist law. It states the date and time of the alleged infraction. The Ticket even provides a court date though the Ticket is not filed with a court, so there is no actual court date.

26. The Ticket threatens suspension of the driver's license if the owner does not do one of three things:

    a. Provide proof of insurance at the time of the violation;

    b. Enter the Diversion Program by paying a fee; or

    c. Appear in court.

27. The owner can provide proof of insurance over the telephone or by visiting a website. Defendant, not the City, maintains the telephone number and website. Thus, an owner calling the telephone number will not reach the City or police department, but Defendant's "help

---

document is a legitimate citation.

desk." The same applies for the website.

28. Defendant receives all fee payments and then remits a portion to the City.

29. Defendant's Diversion Program is a profitable scheme for Defendant. For example, Defendant implemented the Diversion Program for the City of Ocean Springs, Mississippi. Speaking highly of the program, Police Chief Mark Dunston stated, "In the last couple months, we have identified close to 6,000 violations."[4] One of Defendant's representatives stated that this number exceeded Defendant's expectations.[5]

### B. Plaintiff's Facts

30. On or about July 1, 2022, Plaintiff received an envelope via U.S. Mail containing two documents: (1) a Ticket titled, "FINAL NOTICE – PRIOR TO COURT APPEARANCE," which purports to be a ticket from the Ocean Springs Police Department ("OSPD") and (2) an April 4, 2022 letter bearing Police Chief Mark Dunston's signature. True and correct copies of the documents are attached as Exhibits 1 and 2, respectively.

31. The Ticket states that it is a Uniform Traffic Ticket. But the Ticket does not, in fact or in law, comply with Mississippi's Uniform Traffic Ticket statute, Miss Code Ann. 63-9-21.

32. The Ticket contains what appears to be a sworn affidavit from Officer Michael Ducote of the OSPD. Officer Ducote swears that, on March 30, 2022, Plaintiff violated Miss. Code Ann. § 63-15-4 by operating an uninsured vehicle on a public roadway.

33. The Ticket contains an image of Plaintiff's license plate that is, per the affidavit,

---

[4] https://www.insurancejournal.com/news/southeast/2022/03/21/659043.htm (last visited on September 1, 2022).

[5] http://www.cityofsenatobia.com/assets/file/March%201,%202022%20Minutes-20220325151535.pdf (last visited on September 1, 2022).

"evidence of the violation that I have personally confirmed as a duly sworn officer and based on my inspection of recorded images and government information I have determined probable cause that the vehicle was in violation."

34. Officer Ducote does not aver that, at the time of the alleged violation, he executed a traffic stop and determined Plaintiff had no vehicle insurance.

35. Officer Ducote does not aver that, at the time of the alleged violation, any other police officer stopped Plaintiff and determined she had no vehicle insurance.

36. Officer Ducote does not state a time or date when he allegedly "confirmed" that the license plate image was evidence of the violation.

37. Officer Ducote does not state a time or date when he determined that the image established probable cause of a violation.

38. Officer Ducote does not confirm that he personally observed the alleged violation occur in his physical presence or that he personally handed the ticket to Plaintiff as required by Miss. Code Ann. § 63-9-21(6).

39. Put simply, the affidavit merely alleges that, at some unspecified time after the image was taken, Officer Ducote reviewed it, compared it with "government information," and determined (1) probable cause and (2) Plaintiff violated the uninsured motorist statute.

40. The Ticket threatens the suspension of Plaintiff's driver's license unless she does one of three things: (1) provide proof of insurance at the time of the violation; (2) enter the Diversion Program and pay a $300 fee by July 1, 2022 (the same day Plaintiff received the Ticket); (3) or appear in court.

41. The Ticket provides a telephone number and a website to either provide proof of insurance or enter the Diversion Program and pay the fee. Defendant, not the City, created and

maintains the telephone number and website (www.courtstatus.com).

42. The Ticket provides a July 1, 2022 court date, but no case was ever docketed with the court. In other words, the Ticket "summons" Plaintiff to a court date that does not exist.

43. Further, Defendant's website contains many misrepresentations. For example, the site states, "The Court Status Diversion program has been reviewed and approved by the State."[6]

44. The State has done no such thing. In fact, state statute prohibits the use of cameras to enforce traffic laws. Miss. Code Ann. § 17-25-19(1)(a) states:

> Neither the board of supervisors of any county nor the governing authority of any municipality shall adopt, enact or enforce any ordinance authorizing the use of automated recording equipment or system to enforce compliance with traffic signals, traffic speeds *or other traffic laws, rules or regulations* on any public street, road or highway within this state or to impose or collect any civil or criminal fine, fee or penalty for any such violation.

(Emphasis added.)

45. Plaintiff chose to enter the Diversion Program and paid money toward the fee.

## CLASS ACTION ALLEGATIONS

46. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action on behalf of herself and all other similarly situated individuals.

47. The proposed class is defined as follows:

> All United State residents who paid money to Defendant for the Diversion Program.

48. The following persons are excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) anyone employed by counsel for Plaintiff; and (3) judges to whom this case is assigned and their immediate family and staff.

49. The members of the Class are so numerous that joinder of all members is

---

[6] https://courtstatus.com/about/ (last visited on August 28, 2022).

impracticable. There are thousands of individuals in the Class. Defendant mailed approximately 6000 Tickets for alleged violations in Ocean Springs in just a few months alone. This does not include Tickets issued by Defendant for other Cities.

50. The identities of the class members can be determined from Defendant's records.

51. There are questions of law and fact common to the Class that predominate over questions solely affecting individual members.

52. The common questions of law and fact include, but are not limited to:

    a. Whether state or applicable law permits Defendant's Diversion Program;

    b. Whether the Diversion Program violates Plaintiff's and the Class' federal constitutional rights;

    c. Whether the Diversion Program constitutes a violation of 42 U.S.C § 1983 by violating Plaintiff's and the Class' due process rights;

    d. Whether the Diversion Program constitutes a violation of 42 U.S.C § 1983 by violating Plaintiff's and the Class' equal protection rights;

    e. Whether Defendant conspired with Cities in violation of 42 U.S.C § 1985(3);

    f. Whether the Diversion Program unjustly enriched Defendant;

    g. Whether the Diversion Program offends public policy;

    h. Whether the Diversion Program is oppressive or unconscionable; and

    i. Whether Plaintiff and the Class are entitled to actual, punitive, or other damages, costs, attorney fees, and other relief because of Defendant's practices.

53. The questions of law and fact listed above will yield common answers to determine whether Defendant is liable for the alleged legal violations.

54. Plaintiff's claims are typical of those of the members of the Class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

55. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in complex class action litigation.

56. Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class.

57. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendant's policies and practices. There will be no difficulties in managing this action.

58. In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983
### Fourteenth Amendment Due Process Violation

59. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

60. Section 1983 prohibits any person acting under color of law from depriving a citizen of "any rights, privileges, or immunities" provided by the Constitution.

61. Section 1983 is not limited to government entities. Private actors may violate Section 1983 when they act under color of law.

62. Section 1983 is not a substantive claim in and of itself. Rather, the statute

provides a remedy for the violation of a citizen's rights under the Constitution and federal law.

63. The Constitution's Fourteenth Amendment states, in pertinent part, that no State may deprive "any person of life, liberty, or property, without due process of law."

64. Defendant certainly acted under color of law. Defendant contracts with Cities to enforce state uninsured motorist statutes. As detailed above, Defendant's Diversion Program bears all the indicia of official, legitimate police activities.

65. The money Defendant collects from Plaintiff and the Class constitutes property that cannot be taken without due process.

66. Defendant applied its Diversion Program uniformly to Plaintiff and the Class to systematically extract fees without any legal authority to do so. Thus, Defendant deprived Plaintiff and the Class of their property without due process.

67. Defendant knew or should have known that its conduct violated Plaintiff's and the Class' due process rights.

68. The Cities knew about, authorized, and condoned Defendant's unlawful conduct as evidenced by their contracts with Defendant and their receipt of a portion of the money Defendant unlawfully collected from Plaintiff and the Class.

69. Defendant's conduct entitles Plaintiff and the Class to an award of compensatory damages in an amount to be proven at trial.

70. Defendant's conduct constitutes a willful, reckless disregard for the rights of Plaintiff and the Class and entitles Plaintiff and the Class to attorney fees, costs, and punitive damages in amounts to be proven at trial.

## COUNT II
## 42 U.S.C. § 1983
### Fourteenth Amendment Equal Protection Violation

71. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

72. The Constitution's Fourteenth Amendment prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws."

73. The relevant uninsured motorist laws require certain procedures and offer protections to Plaintiff and the Class.

74. These laws provide requirements for everything from how an infraction can be detected to issuance of a citation to court adjudication.

75. Defendant, acting under color of law, caused Plaintiff and the Class to be treated differently from citizens who were ticketed by municipalities that have not contracted with Defendant.

76. Defendant, acting under color of law, treats people differently who own cars that come within view of Defendant's cameras than people whose vehicle are operating in other areas where Defendant's cameras do not exist or where Defendant's cameras have been specifically prohibited by the municipality. For exmaple, people that drive in Ocean Springs are treated differently than people that drive in Columbus, MS.

77. Defendant's Diversion Program subverts state uninsured motorist laws and deprived Plaintiff and the Class of the rights and protections of these state laws.

78. Defendant knew or should have known that its Diversion Program violated Plaintiff's and the Class' Fourteenth Amendment equal protection rights.

79. The Cities knew about, authorized, and condoned Defendant's unlawful conduct as evidenced by their contracts with Defendant and their receipt of a portion of the money Defendant unlawfully collected from Plaintiff and the Class.

80. Defendant's conduct entitles Plaintiff and the Class to an award of compensatory

damages in an amount to be proven at trial.

81. Defendant's conduct constitutes a willful, reckless disregard for the rights of Plaintiff and the Class and entitles Plaintiff and the Class to attorney fees, costs, and punitive damages in amounts to be proven at trial.

## COUNT III
### Violation of U.S.C. § 1985(3)

82. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

83. Section 1985(3) prohibits parties from conspiring to deny a person "equal protection of the laws." An injured party may bring a claim for "the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

84. Defendant conspired with the Cities to implement the Diversion Program for its own enrichment.

85. The Diversion Program deprives Plaintiff and the Class of equal protection by steering them into a program that does not afford Plaintiff and the Class constitutional and statutory rights enjoyed by other citizens.

86. Defendant knew or should have known that its contracts with the Cities to implement the Diversion Program violated Section 1985(3).

87. The Cities knew about, authorized, and condoned Defendant's unlawful conduct as evidenced by their contracts with Defendant and their receipt of a portion of the money Defendant unlawfully collected from Plaintiff and the Class.

88. Defendant's conduct entitles Plaintiff and the Class to an award of compensatory damages in an amount to be proven at trial.

89. Defendant's conduct constitutes a willful, reckless disregard for the rights of Plaintiff and the Class and entitles Plaintiff and the Class to attorney fees, costs, and punitive

damages in amounts to be proven at trial.

## COUNT IV
## Unjust Enrichment

90. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

91. By collecting from Plaintiff and the Class fees for the Diversion Program, Defendant unjustly enriched itself at the expense of Plaintiff and the Class.

92. Defendant's retention of the fees is inequitable, against good conscience, and in violation of state and federal law.

93. As a result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to a refund in the amount of the total fees paid by Plaintiff and the Class.

94. Defendant's conduct constitutes a willful, reckless disregard for the rights of Plaintiff and the Class and entitles Plaintiff and the Class to attorney fees, costs, and punitive damages in amounts to be proven at trial.

## DEMAND FOR JURY TRIAL

95. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

WHEREFORE, Plaintiff and members of the Class respectfully request that this Court enter:

a. An order certifying the case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative and appointing her attorneys as class counsel;

b. A judgment declaring that Defendant has committed the violations of law alleged in this action and an injunction forbidding any future violations;

c. An award of actual and punitive damages;

d. An award of attorney fees and costs; and

e. Such other, different, and further relief that may be just and proper.

Respectfully submitted, this the 1st day of September 2022.

                                                        PLAINTIFF AMY DIVINE, Individually and on behalf of others similarly situated,

*Brian K. Herrington*
Brian K. Herrington, MB# 10204
Rogen K. Chhabra, MB# 99131
Chhabra Gibbs & Herrington PLLC
120 North Congress Street, Suite 200
Jackson, Mississippi 39201
T: 601-948-8005
F: 601-948-8010
bherrington@nationalclasslawyers.com
rchhabra@nationalclasslawyers.com

*Attorneys for Plaintiff*