IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

AMY DIVINE, individually and on
behalf of all others similarly situated                              PLAINTIFF

VS.                                             CIVIL ACTION NO. 3:22-cv-510-HTW-LGI

SECURIX LLP                                                          DEFENDANT

---

**DEFENDANT'S MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS OR
ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT**

---

COMES NOW, Securix LLP (hereinafter referred to as "Defendant" or "Securix"), by and

through counsel, Tim C. Holleman and Hollis T. Holleman, Boyce Holleman and Associates, and

files this its Memorandum in Support of Motion to Dismiss or Alternatively Motion for Summary

Judgment, and in support thereof, Defendant would show unto the Court the following:

## I. INTRODUCTION

Mississippi leads the nation in the highest percentage of uninsured vehicles in the United

States.[1] As a result, Mississippi's insurance costs are the fourth highest in the nation based on the

percentage of median household income.[2]

## II. ITEMIZATION OF FACTS

1.       Amy Divine ("Plaintiff") is a resident of Madison County, Mississippi. Based upon

information and belief, Plaintiff is an agent with the Mississippi Gaming Commission.

---

[1] David Corum, *Uninsured Motorists, 2021 Edition*, The Institutes, Mar. 22, 2021 at 1,
https://www.insurance-research.org/sites/default/files/downloads/UM%20NR%20032221.pdf

[2] Victoria Kilgore, *Auto Insurance Affordability: Countrywide Trends and State Comparisons*, The
Institutes, Sep. 28, 2021 at 3, https://www.insurance-
research.org/sites/default/files/news_releases/IRC%20Auto%20Affordability%20Research%20Brief_0.pd
f

1

2.      As stated in the Complaint, on the morning of March 30, 2022, the Plaintiff was operating a vehicle on Hwy 90 in Ocean Springs, Mississippi, that did not have liability insurance. This is a misdemeanor violation of State law.

3.      The Plaintiff then, according to her Complaint, **voluntarily** entered into a diversion program wherein she began making at least one monthly payment of $50.00 toward a $300.00 diversion fee. The Plaintiff has admitted she violated Mississippi law and is apparently only aggrieved at *how she got caught* because thereafter, on September 1, 2022, the Plaintiff filed this instant action.

4.      The Defendant, Securix, LLP, is a limited liability partnership incorporated in the State of Delaware with its principal place of business in Atlanta, Georgia. According to the Complaint, the Plaintiff alleges that Securix, LLP acted in conjunction with American Digital Security, LLC and Securix, LLC, a Missouri limited liability company. However, these two defendants have nothing to do with the LLP or program in Mississippi, and the Plaintiff has subsequently dismissed these co-defendants from the case. Securix, LLP ("Securix" or "Defendant") is now the only Defendant in this case.

5.      Securix is a vendor for the City of Ocean Springs, Mississippi. See Affidavit of Jonathan P. Miller attached hereto as Exhibit A.

6.      Securix developed a proprietary program ("Program") which interacts with Automatic License Plate Readers (ALPRs) and the Mississippi Insurance Verification System. Only sworn police officers for the City of Ocean Springs, Mississippi have access to the Mississippi Insurance Verification System and the images recorded through the ALPRs.

7.      The officers receive a notification of a potential violation through the Mississippi Insurance Verification System indicating that a particular vehicle may be in violation of Miss.

Code Ann. § 63-15-4(2)(a). This statute requires that every **motor vehicle** operated in the State shall have motor vehicle liability insurance and that "the insured parties shall be responsible for maintaining the insurance on each motor vehicle."

8.      By comparing the license plate image from the ALPRs against the Insurance Verification System, the officer makes a determination as to whether or not probable cause exists to issue a written citation. See Exhibit A.

9.      The Program also provides additional information to help protect the health and safety of citizens. It provides the Ocean Springs Dispatcher with thirteen (13) additional alerts should a vehicle subject to said alerts pass through the ALPRs. This includes BOLO ("be on the lookout" – alerts mainly sent between officers in other counties or cities to be on the lookout for a fugitive or criminal on the run), Amber alerts, silver alerts, and stolen vehicles.

10.     The citation received by Plaintiff, which is attached to her Complaint, gives the offender three (3) options:

      1.      If the vehicle had insurance, to contact Securix and provide proof of insurance.

      2.      If the vehicle did not have insurance, then the owner can voluntarily enter into a diversion program. The vehicle owner can pay a $300.00 fine, agree to obtain liability insurance and watch an online video with regard to driver responsibility; or

      3.      The vehicle owner can choose to appear at the plea date and contest the citation at trial.

As previously stated, the Plaintiff voluntarily chose option 2, to enter into the diversion program, and voluntarily began making monthly payments.

11.     Contrary to Plaintiff's allegations, the City of Ocean Springs, Mississippi is the only city in Mississippi that is currently implementing the Program, although others have expressed interest and may soon adopt.

## III.  LAW AND ARGUMENT

The *gravamen* of Plaintiff's Complaint is that the Program in Ocean Springs, Mississippi violates Mississippi law. This incorrect assumption is her springboard to the alleged Constitutional violations. To reach the conclusion that the Program violates Mississippi law, the Plaintiff fails to cite relevant statutes, partially cites statutes for propositions that are contrary to the statute as a whole, and fails to cite Mississippi Supreme Court cases that are directly on point. The Plaintiff's arguments with regard to the Program being in violation of Mississippi law are based upon the following: (A) that the Mississippi Insurance Law, Miss. Code Ann. § 63-15-4, applies to drivers and not vehicles; (B) that ALPRs are illegal in Mississippi; (C) that the citations issued to drivers violate Mississippi law; and (D) that a diversion program is not allowed under Mississippi law. As will be shown *infra*, these allegations have no support under Mississippi law.

**A.      The Mississippi Uninsured Vehicle Insurance Policy Statute applies to motor vehicles.**

In the Plaintiff's Complaint, she states:

> There is no statute that allows a person to be cited for merely owning a vehicle that does not have liability insurance registered to that specific vehicle. The statutes only require that a properly stopped vehicle operator (as opposed to the owner) provide proof of liability insurance coverage for the person operating the vehicle. . . .

See [Doc. #1 at ¶ 16]. This is an incorrect statement of the law in Mississippi.

4

In 2000, the Mississippi Legislature enacted mandatory vehicle insurance in Mississippi. The statute, Miss. Code Ann. § 63-15-4, has been amended five times since its passage. Section 2(a) states:

> Every motor vehicle operated in the State shall have a motor vehicle liability insurance policy that covers the vehicle and is in compliance with the liability limits required in §63-15-3(j). The uninsured parties shall be responsible for maintaining the insurance on each motor vehicle.

In 2014, an *en banc* Mississippi Supreme Court issued its Opinion in *Lyons vs. Direct General Insurance Company of Mississippi*, 138 So. 3d 887 (2014). The case dealt with the interpretation of Miss. Code Ann. § 63-15-4. Therein, the Mississippi Supreme Court stated, "The mandatory liability insurance liability requirement **pertains to vehicles, not owners or operators**. Said differently, every **vehicle** operated within the State of Mississippi must have the statutorily required minimum coverage requirements . . ." *Id.* at 890 (overruled by statute on other grounds) (emphasis added). Moreover, the Mississippi Insurance Department's own website clearly states "**Remember, insurance follows the car, not the driver**. Always make sure there is a current copy of the insurance ID card and an accident checklist in the car. Make it easier by keeping these documents with your car registration." See *https://www.mid.ms.gov/consumers/auto-accident-checklist.aspx#:~:text=Remember%2C%20insurance%20follows%20the%20car,documents%20with%20your%20car%20registration* (emphasis added).

Since the *Lyons* decision, the Mississippi Legislature has amended Section 63-15-4 concerning the issue of whether or not an insurance company could provide exclusions in its policy. There have been no amendments to the statute that overrules the Supreme Court's decision relied on here, nor the plain language of the statute, which explicitly sets forth that the liability insurance requirement pertains to vehicles, not drivers. In short, the law in Mississippi is in fact

completely opposite to the assertions made by the Plaintiff. Vehicle insurance does not apply to the driver, it applies to the vehicle. Plaintiff's allegations to the contrary are not well founded and should be dismissed.

**B.      The use of ALPRs does not violate Mississippi law.**

In her Complaint, Plaintiff alleges, "Further, Defendant's website contains many misrepresentations. For example, the site states, 'The Court Status Diversion program has been reviewed and approved by the State.'" [Doc. #1 at ¶ 43]. The Complaint continues:

> The State has done no such thing. In fact, the state statute prohibits the use of cameras to enforce traffic laws. Miss. Code Ann. § 17-25-19(1)(a) states: Neither the board of supervisors of any county nor the governing authority of any municipality shall adopt, enact or enforce any ordinance authorizing the use of automated recording equipment or system to enforce compliance with traffic signals, traffic speeds or other traffic laws, rules or regulations on any public street, road or highway within this state or to impose or collect any civil or criminal fine, fee or penalty for any such violation.

[Doc. #1 at ¶ 44). However, inexplicably, the Plaintiff chose not to quote Section 2 of the same statute which directly contradicts Plaintiff's allegations. Section 2 states:

> For the purposes of this section, the term "automated recording equipment or system" means a camera or optical device installed to work in conjunction with a traffic control signal or radar speed detection equipment or both and designed to record images that depict the license plate attached to the rear of a motor vehicle that is not operating in compliance with instructions of the traffic control signal or the posted speed limits.

Miss. Code Ann. § 17-25-19(2). Section 2 of the statute specifically limits the ban on ALPRs to those used in conjunction with radar speed detectors and/or traffic control signals.

Further, the Mississippi Attorney General has directly opined on the legality of a municipality's use of cameras that do not violate Miss. Code Ann. § 17-25-19. See AG Opinion 2009-00176. Therein, the Attorney General was asked if a municipality can install and operate cameras in a police vehicle for enforcement of traffic laws. *Id.* The Attorney General answered yes, stating that the municipality can continue to install and operate cameras in its police vehicles for enforcement of traffic laws. *Id.* The Attorney General went on to state, "the use of cameras in a police vehicle is **not installed to work in conjunction with a traffic light or radar and designed to depict license plates. The narrow definition** of the prohibited activity does not cover the use of vehicle mounted cameras." *Id.* The Attorney General went on to opine that the use of cameras on poles are also allowed under the statute. *Id.* Thus, the Attorney General was clear that the statute's plain language is narrowly tailored to only ban automated recording equipment that works **in conjunction** with traffic control signals or radar speed equipment.

The Program used by Defendant utilizes cameras that are in no way tied in conjunction with traffic control signals or radar speed equipment. The Program does not issue speeding tickets or tickets associated with violation of traffic control signals, such as running a red light or a rolling turn on red. The Program and cameras operate independently and unto themselves, capturing information allowed by law. If the legislature wanted to exclude ALPRs in Mississippi for use in enforcement of Section 63-15-4 (entitled "Proof of insurance; insurance card; violations and penalties"), it has had numerous opportunities to do so. Section 63-15-4 was amended in 2012, 2013, 2015, and 2017. In those amendments, if the legislature desired to remove ALPRs from uninsured motorist enforcement, it had ample opportunity to do so. It did not.

Miss. Code Ann. § 17-25-19 is referenced in one other statute. Under Miss. Code Ann. § 63-9-37, the Mississippi Department of Public Safety shall recognize any civil or criminal fines,

fees, citations or other penalties for violation of compliance with traffic signals, traffic speeds **or other traffic laws, rules or regulation in another state that results from the use of automated recording systems.** This authorizes suspension of a driver's license from the violation of traffic laws recorded with an ALPR in another state. The Plaintiff's allegations that ALPRs are prohibited to enforce traffic laws are frivolous.

**C.      The citations do not violate the Uniform Traffic Ticket Law.**

Additionally, Plaintiff argues in her Complaint that the citation she received violates Section 63-9-21, known as the "Uniform Traffic Ticket Law". Plaintiff goes as far as to allege that the citation is not a real citation to begin with. See [Doc #1 at Footnote 3] (stating "Solely for brevity's sake, Plaintiff refers to the document as "Ticket". Plaintiff disputes that the document is a legitimate citation."). Pursuant to said statute, every ticket must contain the following information:

1. Name of issuing officer;
2. Badge number of issuing officer;
3. Name of court, date, and time of hearing;
4. Offense charged with and sworn by issuing officer.

The citation the Plaintiff received is an electronic ticket, and has all the required information under Section 63-9-21. "A law enforcement officer who files a ticket or misdemeanor affidavit electronically shall be considered to have certified, signed and sworn to the ticket or misdemeanor affidavit and has the same rights, responsibilities and liabilities as with all other tickets or affidavits issued pursuant to this section." Miss. Code Ann. § 63-9-21(8)(b). The citation issued to the Plaintiff meets every requirement of the Uniform Traffic Ticket Law and Plaintiff's claims should be dismissed.

**D.      The diversion program is allowed in Mississippi.**

Miss. Code Ann. § 21-23-7 sets forth the very broad powers of a municipal judge. Section 21-23-7(5) states, "The municipal judge shall have the power to operate a probation program, dispute resolution program, and other practices or procedures appropriate to the judiciary and designed to aid in the administration of justice." The municipal judge of Ocean Springs, Mississippi, has implemented a diversion program. According to the statute, the judge has broad discretion to approve any program or practice that is appropriate to the judiciary and designed to aid in the administration of justice. Clearly, the diversion program does. As Plaintiff admits Defendant's Program was lawfully approved by the City of Ocean Springs, Mississippi and the diversion program was approved by the City's municipal court. Plaintiff's conflicting allegation that the diversion program and Defendant are operating without the approval of the governing authority is entirely baseless.

Under current law, a person in violation of the Uninsured Vehicle Insurance Policy Statute will incur numerous and substantial fines, fees, and suspensions, including: (1) a $100.00 fine pursuant to Section 63-15-4(4); (2) an additional local jurisdiction fine which is often in excess of $500.00 pursuant to Section 21-13-19 which states:

> All offenses under the penal laws of this state which are misdemeanors, together with the penalty provided for violation thereof, are hereby made, without further action of the municipal authorities, criminal offenses against the municipality in whose corporate limits the offenses may have been committed to the same effect as though such offenses were made offenses against the municipality by separate ordinance in each case. However, for such misdemeanor, any penalty of incarceration is hereby limited to no more than six (6) months in jail, and any fine is hereby limited to a maximum of One Thousand Dollars ($1,000.00) for each such violation in any case tried without a jury. Judgments for fines, costs, forfeitures and other penalties imposed by municipal courts may be enrolled by filing a certified copy of the record with the clerk of any circuit court and execution may be had thereon as provided by law for other judgments.

Miss. Code Ann. § 21-13-19; (3) an additional $200.00 fine (first offense) pursuant to Miss. Code Ann. § 99-19-73(8)(c); (4) suspension of driver's license for one year or until the violator can apply to DPS to have license reinstated; and (5) payment of all license reinstatement fees. Thus, not only is the diversion program allowed by law, it provides a very reasonable alternative to much harsher penalties.

Further, Plaintiff repeatedly alleges that Defendant's Program and the diversion program do not afford offenders the protections and defenses afforded under the law and violate the process for such insurance citations from "identification of an alleged violation to adjudication of the ticket." [Doc. #1 at ¶ 17]. This could not be further from the truth. As already discussed *supra*, the ALPRs, as utilized to detect insurance status, are not prohibited under Mississippi law. Thereafter, once a motor vehicle is flagged, police officers appropriately determine if probable cause exits to issue a citation. Under Mississippi law, an officer that issues a citation can dismiss the citation at any time prior to the citation being delivered to the municipal court clerk. The Mississippi Attorney General has opined:

> It is the opinion of this office that a municipal court never has criminal jurisdiction of a misdemeanor prosecution till such time as a criminal affidavit is filed with said court. Therefore, it is the opinion of this office that until a police officer files a criminal affidavit i.e. traffic ticket with a municipal court said officer possesses the necessary authority to withdraw/cancel said criminal prosecution.

1986 WL 82151, at *1 (Miss. A.G. Dec. 18, 1986). Thus, in the present case, if a vehicle owner enters and completes the voluntary diversion program, the police officer issuing the citation has the absolute authority to dismiss the case.

As a practical matter, police officers dismiss citations every day across the State and have been doing so for decades. Commonly known as the "fix it ticket", police officers routinely write

citations for broken or inoperable equipment on a motor vehicle. For example, a police officer pulling someone over for a broken tail light will often write a citation but tell the offender that if they can provide proof that the vehicle has been fixed within fourteen (14) days then the ticket will be dismissed. Again, a great policy that builds relationships between law enforcement and the general public. For the Plaintiff to aver that police officers have no such authority is without merit. It must be reemphasized that the Plaintiff committed a misdemeanor traffic offense by driving from Madison County, Mississippi to Ocean Springs, Mississippi without mandatory required minimum liability insurance.

Additionally, it is noteworthy that Plaintiff chose not to challenge the legality of the diversion program or anything else about her citation in State or City Court, but rather voluntarily agreed to enter the diversion program and has made at least one payment to date. Noticeably absent from Plaintiff's allegations in her Complaint is any averment that her motor vehicle had the proper insurance required under Mississippi law. Plaintiff was operating her motor vehicle in the City of Ocean Springs, Mississippi without insurance in violation of the law. Defendant's lawful Program, authorized by the municipality and coordinated with the police department and city court, detected Plaintiff's illegal activity. Plaintiff was thereafter issued a proper citation backed by the police and enforcement power of the City. Plaintiff was given all due process ordinarily afforded her under the law, including providing proof of insurance to have the ticket dismissed or an opportunity to argue her case in city court. Additionally, Plaintiff was given the option of the lawful diversion program, which affords her an opportunity to pay significantly less in fines and fees, avoid a license suspension, and avoid a strike on her driving record. Plaintiff voluntarily chose the diversion program and entered into a payment plan. Plaintiff's allegations are wholly without merit and should be dismissed.

**E.    Plaintiff's claims under Count I for alleged Section 1983 Due Process violations should be dismissed.**

To succeed on a Section 1983 claim, a plaintiff must prove that their constitutional rights were violated, and that the violation was caused by a person acting under color of law. *West v. Atkins*, 487 U.S. 4242 (1988). In this case, Plaintiff alleges that her rights under the Fourteenth Amendment were violated because she was deprived of property without due process. Plaintiff cannot prove the requisite elements of a Section 1983 claim, and her Complaint is factually incorrect and misleading.

First, Defendant does not deny that it is acting under the color of law. Defendant is purposefully acting in conjunction with, and authorized by, the City of Ocean Springs, Mississippi. The City has contracted with Defendant to assist in enforcing a law that Mississippi drivers flout at a higher rate than any other state in the nation. *supra* note. 1. In her Complaint, Plaintiff attempts to paint Defendant's actions as those of a private company acting unilaterally, yet in the same paragraph she recognizes that Defendant is contracted with the City to assist in enforcing a statute. [Doc. #1 at ¶ 64]. The City is not merely permitting Defendant's Program; it is actively incorporating it into its law enforcement strategy.

Next, Section 1983 due process claims may be substantive or procedural. The fact that Plaintiff fails to specify under which theory her due process rights have allegedly been infringed is inconsequential because she cannot meet the elements of either. To establish a substantive due process violation, a plaintiff must demonstrate that a fundamental right was violated and that the conduct shocks the conscience. *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009). States enforcing traffic regulations does not violate a fundamental right. *See Lutz v. City of York*, 899 F.2d 255, 270 n.41 (3d Cir. 1990). Nor does the Program shock the conscience. *Hughes v. City of*

*Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016) (holding that the use of ALPRs does not violate any fundamental right or shock the conscience.)

Accordingly, the Program must be reviewed under the rational basis test. *Reno v. Flores*, 507 U.S. 292, 301 (1993) (holding that when no fundamental right or suspect class is at issue, a challenged law must pass the rational basis test.). Thus, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest. *Hall v. Bd. of Trustees of State Institutions of Higher Learning*, 712 So. 2d 312, 319 (Miss. 1998). "(T)he sole pertinent question is "whether a rational relationship exists between the policy and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation."" *Johnson v. City of Canton*, 194 So. 3d 161, 170 (Miss. Ct. App. 2015) (quoting *Shelton v. City of Coll. Station*, 780 F.2d 475, 482 (5th Cir. 1986)). Here, Plaintiff is alleging that the manner in which she received a traffic citation is a violation of her substantive due process rights under the Fourteenth Amendment. This argument ultimately fails because Defendant's Program is being used to enforce a Mississippi insurance statute. Thus, the policy is rationally related to a legitimate governmental objective. The City of Ocean Springs, via its partnership with Defendant, is not acting in an arbitrary manner or infringing upon a fundamental right. Rather, they are taking steps to enforce Mississippi law and protect local motorists. Therefore, Plaintiff's substantive due process claim is unfounded and should be dismissed.

It is indisputable that Plaintiff never even attempted to pursue her clearly stated procedural due process rights. Due process in its most basic form requires notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Here, Plaintiff was notified by mail via a traffic citation and a letter from Chief Mark Dunston of the Ocean Springs Police Department. See

[Doc. #1-1, Doc. #1-2] attached to Plaintiff's Complaint. The citation clearly displays the details of the violation and the time and date for Plaintiff to appear in court should she choose that option in lieu of the diversionary program. The letter from the Police Chief explains the same options to Plaintiff and references the court date listed on the enclosed citation. There is no question that Plaintiff received adequate notice of her violation and the ensuing penalties.

As to an opportunity to be heard, the same notice clearly stated an opportunity for Plaintiff to appear in court. Instead, Plaintiff **voluntarily** entered the diversion program, likely because it was to her benefit, as she would face harsher penalties in court. Plaintiff received both notice and an opportunity to be heard in court, yet she chose to enter into the diversionary program set out by the City of Ocean Springs in its partnership with Defendant. Thus, Plaintiff's Section 1983 procedural due process claim fails on both elements and should be dismissed.

**F.  Plaintiff's claims under Count II for alleged Section 1983 Equal Protection violations should be dismissed.**

The crux of Plaintiff's Fourteenth Amendment equal protection argument is that "people who drive in Ocean Springs are treated differently than people that drive in [other cities in Mississippi]." [Doc. #1 at ¶ 76]. However, Mississippi courts, as well as courts across the country, unanimously agree that such claims do not establish an equal protection violation. *Dantzler v. State*, 542 So. 2d 906, 907 (Miss. 1989); See *Akbar v. Daley*, No. 09-CV-1289, 2009 WL 3055322, at *4 (N.D. Ill. Sept. 18, 2009) *discussed infra*; see also *Idris v. City of Chicago, Ill.*, 552 F.3d 564, 566 (7th Cir. 2009) *discussed infra*.

In *Dantzler*, plaintiff purchased beer in a "wet" part of Hattiesburg but was then arrested in a "dry" county while driving home. *Dantzler* 542 So. 2d at 906. The plaintiff challenged the arrest and alleged that he was being discriminated against between municipalities. *Id.* In doing so, plaintiff argued that he was deprived of equal protection rights under the Mississippi Constitution

and the Constitution of the United States. *Id.* The Mississippi Supreme Court dismissed the plaintiff's claim and specifically held that:

> Defendant convicted for possession of beer in "dry" part of county while traveling home after having legally purchased beer in "wet" city located partially within otherwise "dry" county was not denied equal protection under the laws and Constitution of the State or the Constitution of the United States.

*Id.* at 912. The Court further noted that:

> Constitutional guaranties of the equal protection of the laws and of due process are not denied by a local option law *merely because under it the traffic in intoxicating liquors may be made a crime in certain territory and permitted elsewhere.*

*Id.* at 910 (emphasis added). Simply put, it is not a violation of Plaintiff's equal protection rights for Ocean Springs and Defendant to operate insurance ALPRs while other cities in Mississippi do not. Just as one city may permit alcohol and another one may not, Defendant may implement its Program in Ocean Springs without the Program being implemented in other cities. Plaintiff has not been denied equal protection under the United States Constitution. These claims should be dismissed.

Further, Plaintiff has wholly failed to establish any identifiable group necessary for an equal protection claim. Plaintiff merely alleges that those driving in Ocean Springs are treated differently. However, this is not an identifiable group. Plaintiff's claim should be dismissed for this reason alone. A persuasive Court has addressed this exact issue and held that:

> The crux of Plaintiff's claim is that because no automated red light cameras exist in the downtown area, fewer tickets are issued in that area compared to the areas in which the red light cameras are located. The purported classification would appear to be: (i) individuals who drive in the downtown area and (ii) others who drive in the City but beyond the downtown limits. According to Plaintiff, those in the latter group are being treated differently because they are subject to potential red light violations twenty-four hours a day, even in the absence of police officers on the scene. That

classification is problematic because the constituent members of the two groups constantly are in flux. Equal protection challenges to government classifications generally are concerned with distinctions based on an "identifiable group." See *Enquist v. Oregon Dep't of Agric.*, ——U.S. ——, ——, 128 S.Ct. 2146, 2152, 170 L.Ed.2d 975 (2008) (citation omitted); see also *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 60, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create *discrete and objectively identifiable classes"* ) (emphasis added). Plaintiff's classification may be discrete and identifiable at one moment in time, but the members of the class would change from moment to moment. Although the locations of allegedly differential enforcement are static, the drivers who are affected (or not) change on a daily basis. One could easily transition from protected class to discriminated class by driving a few blocks. There is no identifiable group of people who drive exclusively in the downtown areas, nor is there a separate and distinct group whose driving is limited to the outskirts. Without an identifiable classification, the government is not drawing a distinction between groups of people and Plaintiff's claim could be dismissed for this reason alone.

*Akbar v. Daley*, No. 09-CV-1289, 2009 WL 3055322, at *3 (N.D. Ill. Sept. 18, 2009). Similarly, those driving in Ocean Springs at the requisite ALPR locations would change on a daily basis. Plaintiff has not recognized any identifiable group, an essential element to her equal protection claim. Plaintiff's equal protection claim should be dismissed.

Finally, and assuming *per arguendo* that Plaintiff has recognized an identifiable group, the Court must then consider the level of scrutiny that it should impose on the Defendant's Program. *Id.* There is no indication that the ALPRs target a suspect class or address a fundamental right. See *Id.* (holding that "no suspect class or fundamental rights are targeted by the placement of cameras throughout the City. Any individual, regardless of race, national origin, or any other classification is a potential target of this ordinance."); see also *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016) (holding that no fundamental right or suspect class was at issue with claims involving city's traffic camera system); see also Lisa S. Morris, *Photo Radar: Friend*

*or Foe?*, 61 UMKC L. Rev. 805, 819 (1993) (noting that "the classifications created by photo radar laws would seem to be: those who are photographed speeding and mailed a ticket; and those who are stopped by a live officer and handed a citation. Because these classes are neither suspect nor quasi-suspect, nor do they involve a fundamental right, they should be subject to a rational-basis review."); See also *Idris v. City of Chicago, Ill.*, 552 F.3d 564, 566 (7th Cir. 2009) (finding that no suspect class was targeted or fundamental right addressed where defendants implemented a program that uses automated cameras to catch vehicles in the act of entering intersections against red traffic lights).

Where no fundamental right or suspect class is at issue, matters challenged on equal protection grounds are subject to the rational basis test. U.S. Const. Amend. 14; *City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016). The rational basis test requires only that a government action be "rationally related to a legitimate government interest." *City of Chicago, Ill.*, 552 F.3d 564, 566 (7th Cir. 2009). In rational basis review, "legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563, (1955).

Courts addressing traffic camera systems have continuously found that the implementation of such systems is rationally related to a legitimate government interest, i.e.- reducing traffic and legal violations. See *City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016) (holding that City's traffic camera system, which issued citations automatically to drivers caught violating traffic laws on camera, did not violate equal protection; system was rationally related to city's legitimate

17

interest in reducing traffic violations.)' See also *City of Chicago, Ill.*, 552 F.3d 564, 566 (7th Cir. 2009) (noting that: "Is it rational to fine the owner rather than the driver? Certainly so. A camera can show reliably which cars and trucks go through red lights but is less likely to show who was driving. That would make it easy for owners to point the finger at friends or children—and essentially impossible for the City to prove otherwise.")

Defendant's Program is rationally related to a legitimate purpose – i.e. reducing the number of uninsured drivers, and reducing the number of people violating the law by not procuring insurance. There is no equal protection violation. Plaintiff's claim should be dismissed.

**G.    Plaintiff's claims under Count III for alleged violations under Section 1985(3) should be dismissed.**

In addition to bringing her equal protection claim under Section 1983, Plaintiff also invokes 42 U.S.C. § 1985(3). Section 1985(3), as alleged in Plaintiff's complaint, "prohibits parties from conspiring to deny a person 'equal protection of the laws'". [Doc. #1 at ¶ 83]. However, and as stated above, Plaintiff has failed to establish an equal protection violation. Without an equal protection violation, Plaintiff's claim fails. See *City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016) (dismissing Plaintiff's equal protection claim and holding that City's traffic camera system, which issued citations automatically to drivers caught violating traffic laws on camera, did not violate equal protection).

Further, Plaintiff chose not to cite key parts of Section 1985(3). To state a claim under § 1985(3), the plaintiff must allege a conspiracy **with the purpose of depriving a class of persons of the equal protection of the laws**. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). In other words, Section 1985(3) requires the "purpose" of a conspiracy to be the deprivation of equal rights. *See* 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire ... *for the purpose* of depriving, either directly or

indirectly, any person or class of persons of the equal protection of the laws....") (emphasis added).

As such, the conspiracy must be motivated by discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection ... means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action").

There is no discriminatory purpose behind the Program. Persuasive case law has established that similar programs have no discriminatory intent. *Akbar v. Daley*, No. 09-CV-1289, 2009 WL 3055322, at *3 (N.D. Ill. Sept. 18, 2009) (holding that "no suspect class or fundamental rights are targeted by the placement of cameras throughout the City. Any individual, regardless of race, national origin, or any other classification is a potential target of this ordinance.") To the contrary, it has consistently been established that the implementation of such programs are rationally related to a legitimate purpose. See *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016) (holding that the City could rationally conclude that the traffic camera system would reduce the number of people violating traffic laws); See also *Idris v. City of Chicago, Ill.*, 552 F.3d 564, 566 (7th Cir. 2009) (holding that Defendant's implementation of automated traffic cameras was rationally related to city's goal of improving compliance with the law). Accordingly, Plaintiff's 1985(3) claim fails and should be dismissed.

## H.    Count IV – Unjust Enrichment

Finally, Plaintiff attaches on an unjust enrichment claim, alleging that Defendant has unjustly enriched itself for its alleged violation of state and federal law addressed hereinabove. Again, for all arguments made *supra*, Defendant has operated legally and in compliance with the law. Plaintiff's claims under Count IV should also fail. Defendant denies that Plaintiff is due any

relief, including attorney's fees, costs, and punitive damages, and Plaintiff's unjust enrichment claim should be dismissed.

## IV. CONCLUSION

Defendant has exhaustively attempted to address and move for dismissal of any and all potential claims brought by Plaintiff. To the extent this Honorable Court or Plaintiff identifies a cause of action not addressed herein, Defendant respectfully moves for dismissal of such claim based on the collective arguments and authority presented in this Memorandum.

WHEREFORE, PREMISES CONSIDERED, Defendant, Securix LLP, respectfully requests this Court grant its Motion to Dismiss or Alternative Motion for Summary Judgment and dismiss all of Plaintiff's claims, with prejudice, and for all additional and appropriate relief.

Respectfully submitted, this the 17th day of October, 2022.

SECURIX LLP,
*Defendant*

BY: _____
HOLLIS T. HOLLEMAN, Attorney for Defendant

Tim C. Holleman (Ms Bar #2526)
Hollis T. Holleman (Ms Bar #105692)
Boyce Holleman & Associates
1720 23rd Avenue/Boyce Holleman Blvd.
Gulfport, MS 39501
Telephone: (228) 863-3142
Facsimile: (228) 863-9829
Email: tim@boyceholleman.com
        hollis@boyceholleman.com

## CERTIFICATE

I, Hollis T. Holleman, do hereby certify that I have this day filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to all counsel of

record.

This the 17th day of October, 2022.

/s/ Hollis T. Holleman
Hollis T. Holleman

Tim C. Holleman  (Ms Bar #2526)
Hollis T. Holleman (Ms Bar #105692)
BOYCE HOLLEMAN & ASSOCIATES
1720 23rd Ave./Boyce Holleman Blvd.
Gulfport, MS  39501
Telephone:  (228) 863-3142
Facsimile:  (228) 863-9829
Email:  hollis@boyceholleman.com