IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

AMY DIVINE and KARL MERCHANT,                                              PLAINTIFFS
on behalf of themselves and all others similarly situated

v.                                               CIVIL ACTION NO. 3:22cv510-HTW-LGI

SECURIX, LLC                                                                 DEFENDANT

**FIRST AMENDED CLASS ACTION COMPLAINT**
**Jury Trial Demanded**

COME NOW Plaintiffs Amy Divine and Karl Merchant, on behalf of themselves and all others similarly situated, and file this First Amended Class Action Complaint against Defendant and state as follows:

**NATURE OF THE CASE**

1. Pretending to be law enforcement, Defendant has made millions of dollars collecting fees from individuals who allegedly violated state uninsured vehicle laws.

2. Specifically, Defendant contracts with government entities ("City" or "Cities") to implement Defendant's system ("Diversion Program") for detecting, ticketing, and collecting fees from vehicle owners that Defendant believes are uninsured. Defendant tickets the registered owner of the vehicle without regard to who was driving and with no analysis of whether the driver was lawfully insured.

3. Defendant goes to great lengths to make it appear that the City operates the Diversion Program. Defendant's form ticket or citation bears the name of the City and does not mention Defendant's name. The ticket contains what appears to be a police officer's sworn affidavit and states that a court date has been set (though no case has actually been docketed).

4. The ticket provides a telephone number and website that a vehicle owner can use

1

to pay the fee. But, Defendant, not the City, creates and maintains the number and the website.

5.  Defendant receives all fee payments and then remits a portion to the City.

6.  Acting under color of law, Defendant handles everything from detection of the alleged violation to payment of the fee. Put simply, for alleged uninsured vehicle infractions, Defendant becomes the police department.

7.  Defendant's Diversion Program violates the rights afforded Plaintiffs and the Class by the Constitution, statutes, and common law. Plaintiffs and the Class assert claims for violations of 42 U.S.C. § 1983 as well as for abuse of process and unjust enrichment.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), because this case is a class action, the Class has more than 100 members, the amount in controversy exceeds $5,000,000, and Plaintiffs are citizens of a different state than Defendant.

9.  Defendant is a limited liability company. As such, for the purpose of determining CAFA jurisdiction, Defendant is treated as an unincorporated association. 28 U.S.C § 1332(d)(10). Therefore, the Court's jurisdiction is not determined by the citizenship of Defendant's members.

10. This Court has supplemental jurisdiction to determine state law claims per 28 U.S.C. § 1367.

11. Venue is proper in this District per 28 U.S.C. § 1391 because Defendant is located and conducts business in this District.

## PARTIES

12. Plaintiff Amy Divine ("Divine") is an adult resident citizen of the state of Mississippi residing in Madison County, Mississippi.

13. Plaintiff Karl Merchant ("Merchant") is an adult resident citizen of the state of Mississippi residing in Jackson County, Mississippi.

14. Defendant Securix LLC is a limited liability company incorporated in the state of Delaware with its principal place of business in the state of Georgia. It operates in Mississippi as "Securix, LLP," but has requested the Mississippi Secretary of State to correct its name to "Securix, LLC." *See* Dkt. 9-1, ¶ 1.

## FACTS

**A.     Defendant's Unlawful Conduct.**

15. Reducing the number of uninsured vehicles on the public roadways is a laudable goal. Trampling on the rights of vehicle owners is not and Defendant's Diversion Program does just that.

16. Enforcing an uninsured vehicle statute costs money and resources. Detection, enforcement, and prosecution present budget and staffing difficulties for Cities. And the time police officers spend on such infractions detracts from the time they could have spent on more serious crimes.

17. In comes Defendant. Defendant represents to Cities that its Diversion Program will not only ease these burdens, but actually increase revenues. Defendant will even pay the Cities' police officers for "confirming" the alleged violations.

18. The pitch has been successful, and Defendant has contracted with Cities in several states to implement the Diversion Program. On one of its websites, Defendant states, "SECURIX has established and operates Public Safety Companies in most states around the nation, (see

newyorkpublicsafety.com, missouripublicsafety.com, etc.)."[1]

19.     To identify alleged uninsured vehicles, the Diversion Program relies solely on automated license plate readers ("ALPRs"), which can be mounted on police cars, road signs, or traffic lights. ALPRs capture computer-readable images of license plates that allow Defendant to compare the plate numbers against various databases to determine whether a particular vehicle is insured or not. If Defendant believes a vehicle is uninsured, Defendant mails a document to the vehicle owner that purports to be a legitimate traffic ticket.[2]

20.     The Diversion Program is unlawful for many reasons.

21.     Many states explicitly prohibit the use of ALPRs to enforce uninsured vehicle statutes. In Mississippi, Cities may not use ALPRs to enforce "traffic laws." Miss. Code Ann. § 17-26-19(1)(a).[3] The statute defines ALPRs as "a camera or optical device installed to work in conjunction with a traffic control signal or radar speed detection equipment or both and designed to record images that depict the license plate attached to the rear of a motor vehicle that is not operated in compliance with instructions of the traffic control signal or the posted speed limit." Miss. Code Ann. § 17-26-19(2).

22.     Defendant believes this definition's lack of a specific prohibition of the use of ALPRs to enforce the uninsured vehicle statute is the same as authorization for such use. It is not.

23.     ALPRs identify only the registered owner of the vehicle and not the driver. This

---

[1] https://www.securixsystems.com/ (last visited on November 27, 2022).

[2] Solely for brevity's sake, Plaintiffs refer to the document as "Ticket." Plaintiffs dispute that the document is a legitimate citation.

[3] Discovery will reveal the other states in which Defendant operates its Diversion Program.

fact is crucial in determining the existence of probable cause and, ultimately, liability. Many states, like Mississippi, have enacted uninsured vehicle statutes that do not specify whether a vehicle owner, operator, or some other party must maintain the necessary insurance.

24. Mississippi's statute states, "Every motor vehicle operated in this state shall have a motor vehicle liability insurance policy that covers the vehicle and is in compliance with the liability limits required by Section 63-15-3(j). The insured parties shall be responsible for maintaining the insurance on each motor vehicle." Miss. Code Ann. § 63-15-4(2).

25. The statute merely requires that the vehicle be insured and does not turn on whether a driver as opposed to an owner insures the vehicle.

26. The Mississippi Attorney General has affirmed this aspect of the statute:

> It is the opinion of this office that a violation of Section 63-15-4 occurs only when both the owner and operator fail to have proof of insurance. Therefore, if the operator has proof of insurance which covers his operation of the vehicle but the owner does not, there is no violation. Likewise, if the owner of the motor vehicle has proof of insurance in the vehicle but the operator does not, there is still no violation.

Op. Att'y Gen. No. 2015-00309, 2015 WL 6121922 (Sept. 4, 2015) (quoting Op. Miss. Att'y Gen., No. 2001-0052, 2001 WL 283638 (Feb. 9, 2001)). By relying solely on information obtained from vehicle owner records, Defendant lacked probable cause to send the Tickets to vehicle owners.

27. Law enforcement officers may issue a citation for violation of the statute only in connection with a roadblock used to enforce traffic laws or upon stopping a vehicle for some other statutory violation. *See* Miss. Code Ann. § 63-15-4(3) ("However, no driver shall be stopped or detained solely for the purpose of verifying that the motor vehicle is covered by liability insurance in the amounts required under Section 63-15-3(j) unless the stop is part of such roadblock.") and Miss. Code Ann. § 63-16-5(3) ("Except upon reasonable cause to believe

that a driver has violated another traffic regulation or that the driver's motor vehicle is unsafe or not equipped as required by law, a law enforcement officer may not use the [insurance] verification system to stop a driver for operating a motor vehicle in violation of this chapter.").

28. In blatant violation of these statutes, Defendant does not issue Tickets in conjunction with a lawful stop. In fact, there is no stop at all. Defendant merely takes pictures of license plates, unlawfully runs the information through the State's verification system, and sends out Tickets.

29. But wait, there's more. The Diversion Program is egregiously misleading and deceptive.

30. The Ticket that Defendant mails to the vehicle owner has all the trappings of a legitimate ticket. It represents that it is issued by the City's police department, and it does not mention Defendant's name. The Ticket contains what appears to be a sworn affidavit from a police officer stating that the owner has violated the state's uninsured vehicle law. It states the date and time of the alleged infraction.

31. The Ticket even provides a court date though the Ticket is not filed with a court, so there is no actual court date.

32. The Ticket threatens suspension of the owner's driver's license unless the owner does one of three things:

    a. Provide proof of insurance at the time of the violation;

    b. Enter the Diversion Program by paying a fee; or

    c. Appear in court.

33. The owner can provide proof of insurance over the telephone or by visiting a website. Defendant, not the City, maintains the telephone number and website. Thus, an owner calling the telephone number will not reach the City or police department, but Defendant's "help

desk."

34. Defendant's website for Mississippi contains many misrepresentations. For example, the site states, "The Court Status Diversion program has been reviewed and approved by the State."[4]

35. The State has done no such thing. No state statute authorizes the use of ALPRs to enforce Mississippi's uninsured vehicle statute nor does any state statute authorize the implementation and use of the Diversion Program.

36. The site also asserts, "Mississippi law states that the owner of a vehicle is responsible for insurance coverage of that vehicle, regardless of who is driving it unless the vehicle is stolen."[5]

37. Not true. The Mississippi Attorney General has advised that "if a person is driving someone else's vehicle, and neither the operator or the vehicle owner has insurance, the operator of the vehicle is in violation of the law and should be cited." Op. Att'y Gen. No. 2002-0422, 2002 WL 31169193 (Aug. 2, 2002).

38. Defendant's Diversion Program is a profitable scheme for Defendant. For example, Defendant implemented the Diversion Program for the City of Ocean Springs, Mississippi. Speaking highly of the program, Police Chief Mark Dunston stated, "In the last couple months, we have identified close to 6,000 violations."[6] Defendant has stated that this number exceeded its expectations.[7]

---

[4] https://courtstatus.com/about/ (last visited on November 28, 2022).

[5] https://courtstatus.com/faq/ (last visited on November 27, 2022).

[6] https://www.insurancejournal.com/news/southeast/2022/03/21/659043.htm (last visited on November 28, 2022).

[7] http://www.cityofsenatobia.com/assets/file/March%201,%202022%20Minutes-

B.  **Plaintiff Divine's Facts**

39. On or about July 1, 2022, Divine received an envelope via U.S. Mail containing two documents: (1) a Ticket titled, "FINAL NOTICE – PRIOR TO COURT APPEARANCE," which purports to be a ticket from the Ocean Springs Police Department ("OSPD") and (2) an April 4, 2022 letter bearing Police Chief Mark Dunston's signature. True and correct copies of the documents are attached as Exhibits 1 and 2, respectively.

40. The Ticket states that it is a Uniform Traffic Ticket. But the Ticket does not, in fact or in law, comply with Mississippi's Uniform Traffic Ticket statute, Miss. Code Ann. § 63-9-21.

41. The Ticket contains what appears to be a sworn affidavit from Officer Michael Ducote of the OSPD. Officer Ducote swears that, on March 30, 2022, Divine violated Miss. Code Ann. § 63-15-4 by operating an uninsured vehicle on a public roadway.

42. The Ticket contains an image of Divine's license plate that is, per the affidavit, "evidence of the violation that I have personally confirmed as a duly sworn officer and based on my inspection of recorded images and government information I have determined probable cause that the vehicle was in violation."

43. Officer Ducote does not aver that, at the time of the alleged violation, he executed a traffic stop and determined Divine had no vehicle insurance.

44. Officer Ducote does not aver that, at the time of the alleged violation, any other police officer stopped Divine and determined she had no vehicle insurance.

45. Officer Ducote does not state a time or date when he allegedly "confirmed" that the license plate image was evidence of the violation.

---

20220325151535.pdf (last visited on November 26, 2022).

46. Officer Ducote does not state a time or date when he determined that the image established probable cause of a violation.

47. Officer Ducote does not confirm that he personally observed the alleged violation occur in his physical presence or that he personally handed the Ticket to Divine as required by Miss. Code Ann. § 63-9-21(6).

48. Put simply, the affidavit merely alleges that, at some unspecified time after the image was taken, Officer Ducote reviewed it, compared it with "government information," and determined that (1) probable cause existed and (2) Divine violated the uninsured vehicle statute.

49. The Ticket threatens the suspension of Divine's driver's license unless she does one of three things: (1) provide proof of insurance at the time of the violation; (2) enter the Diversion Program and pay a $300 fee by July 1, 2022 (the same day Divine received the Ticket); (3) or appear in court.

50. The Ticket provides a telephone number and a website to either provide proof of insurance or enter the Diversion Program and pay the fee. Defendant, not the City, created and maintains the telephone number and website (www.courtstatus.com).

51. The Ticket provides a July 1, 2022 court date, but no case was ever docketed with the court. In other words, the Ticket "summons" Divine to a court date that does not exist.

52. Divine paid $100 of the $300 fee for the Diversion Program. In addition to her monetary damages, she faces the possibility of further harm from Defendant's unlawful conduct, *e.g.*, suspension of her license.

C. **Plaintiff Merchant's Facts**

53. In early August 2022, Merchant received an envelope via U.S. Mail containing a Ticket titled, "STATE OF MISSISSIPPI – UNIFORM TRAFFIC TICKET," which purports to be a ticket from the OSPD.

54. A true and correct copy of Merchant's Ticket is attached as Exhibit 3.

55. The Ticket states that it is a Uniform Traffic Ticket. But the Ticket does not, in fact or in law, comply with Mississippi's Uniform Traffic Ticket statute, Miss. Code Ann. § 63-9-21.

56. The Ticket contains what appears to be a sworn affidavit from Officer Beasley of the OSPD. Officer Beasley swears that, on June 12, 2022, Merchant violated Miss. Code Ann. § 63-15-4 by operating an uninsured vehicle on a public roadway.

57. The Ticket contains an image of Merchant's license plate that is, per the affidavit, "evidence of the violation that I have personally confirmed. Based on my inspection of recorded images and government information I have determined probable cause that the vehicle was in violation."

58. Officer Beasley does not aver that, at the time of the alleged violation, he executed a traffic stop and determined Merchant had no vehicle insurance.

59. Officer Beasley does not aver that, at the time of the alleged violation, any other police officer stopped Merchant and determined he had no vehicle insurance.

60. Officer Beasley does not state a time or date when he allegedly "confirmed" that the license plate image was evidence of the violation.

61. Officer Beasley does not state a time or date when he determined that the image established probable cause of a violation.

62. Officer Beasley does not confirm that he personally observed the alleged violation occur in his physical presence or that he personally handed the Ticket to Merchant as required by Miss. Code Ann. § 63-9-21(6).

63. Put simply, the affidavit merely alleges that, at some unspecified time after the

10

image was taken, Officer Beasley reviewed it, compared it with "government information," and determined that (1) probable cause existed and (2) Merchant violated the uninsured vehicle statute.

64. The Ticket threatens the suspension of Merchant's driver's license unless he does one of three things: (1) provide proof of insurance at the time of the violation; (2) enter the Diversion Program and pay a $300 fee by September 2, 2022; (3) or appear in court.

65. The Ticket provides a telephone number and a website to either provide proof of insurance or enter the Diversion Program and pay the fee. Defendant, not the City, created and maintains the telephone number and website (www.courtstatus.com).

66. The Ticket provides a September 2, 2022 court date, but no case was ever docketed with the court. In other words, the Ticket "summons" Merchant to a court date that does not exist.

67. Merchant paid the $300 fee for the Diversion Program.

## CLASS ACTION ALLEGATIONS

68. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals.

69. The proposed class is defined as follows:

All United State residents to whom Defendant sent Tickets alleging a violation of a state's uninsured vehicle statute.

70. The following persons are excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) anyone employed by counsel for Plaintiffs; and (3) judges to whom this case is assigned and their immediate family and staff.

71. The members of the Class are so numerous that joinder of all members is impracticable. There are thousands of individuals in the Class. Defendant mailed approximately

6000 Tickets for alleged violations in Ocean Springs in just a few months alone. This does not include Tickets issued by Defendant for other Cities.

72. The identities of the class members can be determined from Defendant's records.

73. There are questions of law and fact common to the Class that predominate over questions solely affecting individual members.

74. The common questions of law and fact include, but are not limited to:

    a. Whether state or applicable law permits Defendant's Diversion Program;

    b. Whether the Diversion Program violates Plaintiffs' and the Class' federal constitutional rights;

    c. Whether the Diversion Program constitutes a violation of 42 U.S.C § 1983 by violating Plaintiffs' and the Class' procedural due process rights;

    d. Whether Defendant's conduct constitutes abuse of process;

    e. Whether the Diversion Program unjustly enriched Defendant;

    f. Whether the Diversion Program offends public policy;

    g. Whether the Diversion Program is oppressive or unconscionable; and

    h. Whether Plaintiff and the Class are entitled to actual, punitive, or other damages, costs, attorney fees, and other relief because of Defendant's practices.

75. The questions of law and fact listed above will yield common answers to determine whether Defendant is liable for the alleged legal violations.

76. Plaintiffs' claims are typical of those of the members of the Class. Plaintiffs, like other class members, were subject to the unlawful practices described herein.

77. Plaintiffs will fairly and adequately protect the interests of the Class and has retained counsel experienced in complex class action litigation.

78. Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or

corresponding declaratory relief is appropriate with respect to the Class.

79. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendant's policies and practices. There will be no difficulties in managing this action.

80. In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983
### Fourteenth Amendment Procedural Due Process Violation

81. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

82. Section 1983 prohibits any person acting under color of law from depriving a citizen of "any rights, privileges, or immunities" provided by the Constitution.

83. Section 1983 is not limited to government entities. Private actors may violate Section 1983 when they act under color of law.

84. Section 1983 is not a substantive claim in and of itself. Rather, the statute provides a remedy for the violation of a citizen's rights under the Constitution and federal law.

85. The Constitution's Fourteenth Amendment states, in pertinent part, that no State may deprive "any person of life, liberty, or property, without due process of law."

86. The money Defendant collected from Plaintiffs and the Class constitutes property that cannot be taken without the due process.

87. The Mississippi statutes discussed in paragraphs 21-37, *supra*, articulate the process required of governmental entities for the detection and prosecution of violations of the uninsured vehicle statute.

88. Here, Defendant certainly acted under color of law. Defendant contracts with Cities to enforce state uninsured vehicle statutes. Defendant's Diversion Program bears all the indicia of official, legitimate police activities.

89. The Diversion Program unlawfully bypasses the statutory procedure as discussed in paragraphs 21-37, *supra*, to the detriment of Plaintiffs and the Class.

90. Defendant applied its Diversion Program uniformly to Plaintiff and the Class to systematically extract fees without any legal authority to do so. Thus, Defendant deprived Plaintiff and the Class of their property without procedural due process.

91. Defendant knew or should have known that its conduct violated Plaintiffs' and the Class' due process rights.

92. The Cities knew about, authorized, and condoned Defendant's unlawful conduct as evidenced by their contracts with Defendant and their receipt of a portion of the money Defendant unlawfully collected from Plaintiffs and the Class.

93. Defendant's conduct entitles Plaintiffs and the Class to an award of compensatory damages in an amount to be proven at trial.

94. Defendant's conduct constitutes a willful, reckless disregard for the rights of Plaintiffs and the Class and entitles Plaintiffs and the Class to attorney fees, costs, and punitive damages in amounts to be proven at trial.

## COUNT II
## ABUSE OF PROCESS

95. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

96. Defendant's entire Diversion Program constitutes an unlawful use of the legal process governing alleged violations of uninsured vehicle statutes. The facts above evince Defendant's intent to abuse the privileges of the legal system.

97. Defendant's ulterior, if not sole, motive for developing and implementing the Diversion Program was to make money at the expense of Plaintiffs and the Class. Uninsured vehicle statutes were not enacted to serve as revenue streams for private companies such as Defendant.

98. Plaintiffs and the Class have been damaged by Defendant's conduct. Their damages range from monies paid toward the Diversion Program fees to the suspension of their driver's licenses.

99. Defendant's conduct entitles Plaintiffs and the Class to an award of compensatory damages in an amount to be proven at trial.

100. Defendant's conduct constitutes a willful, reckless disregard for the rights of Plaintiffs and the Class and entitles Plaintiffs and the Class to attorney fees, costs, and punitive damages in amounts to be proven at trial.

## COUNT III
## UNJUST ENRICHMENT

101. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

102. By collecting fees from Plaintiffs and the Class for the Diversion Program, Defendant unjustly enriched itself at the expense of Plaintiffs and the Class.

103. Defendant's retention of the fees is inequitable, against good conscience, and in violation of state and federal law.

104. As a result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to a refund in the amount of the total fees paid by Plaintiffs and the Class.

105. Defendant's conduct constitutes a willful, reckless disregard for the rights of Plaintiffs and the Class and entitles Plaintiffs and the Class to attorney fees, costs, and punitive damages in amounts to be proven at trial.

## **DEMAND FOR JURY TRIAL**

106. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

WHEREFORE, Plaintiffs and members of the Class respectfully request that this Court enter:

a. An order certifying the case as a class action under Fed. R. Civ. P. 23, naming Plaintiffs as Class Representatives and appointing their attorneys as class counsel;

b. A judgment declaring that Defendant has committed the violations of law alleged in this action and an injunction forbidding any future violations;

c. An award of actual and punitive damages;

d. An award of attorney fees and costs; and

e. Such other, different, and further relief that may be just and proper.

Respectfully submitted, this the 28th day of November 2022.

PLAINTIFFS,

*Brian K. Herrington*
Brian K. Herrington, MB# 10204
Rogen K. Chhabra, MB# 99131
Chhabra Gibbs & Herrington PLLC
120 North Congress Street, Suite 200
Jackson, Mississippi 39201
T: 601-948-8005
F: 601-948-8010
bherrington@nationalclasslawyers.com

rchhabra@nationalclasslawyers.com

*Attorneys for Plaintiffs*